ISIDOR PAIEWONSKY ASSOCIATES, INC., and L.S.
HOLDING, INC., Plaintiffs

v.

SHARP PROPERTIES, INC., BARED JEWELERS OF THE
V.I., INC., and ARI CORPORATION, Defendants

Civil Action No. 87-44

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 27, 1991

RICHARD GRUNERT, ESQ., St. Thomas, V.I., *for plaintiffs Isidor Paiewonsky Associates, Inc. and L.S. Holding, Inc.*

FREDERICK WATTS, ESQ., St. Thomas, V.I., *for defendants Sharp Properties, Inc.*

MARIA T. HODGE, ESQ., St. Thomas, V.I. and JULIO BRADY, ESQ., St. Croix, V.I., *for defendant Bared Jewelers of the V.I., Inc.*

ARTHUR POMERANTZ, ESQ., St. Thomas, V.I., *for defendant Ari Corporation*

McGLYNN, *Judge*

## MEMORANDUM OF DECISION

This case comes before the court on a Motion for Entry of Judgment. The plaintiffs, Isidor Paiewonsky Associates, Inc., (IPA) and L.S. Holding, Inc., contend that they are entitled to entry of judgment in their favor based upon the terms of a proposed settlement agreement. Two of the three defendants, Bared Jewelers of the V.I., Inc. (Bared) and Ari Corporation (Ari), assert that the plaintiffs are

not entitled to entry of judgment in their favor because Bared and Ari never assented to the terms of the proposed settlement agreement.

## I. BACKGROUND

The plaintiffs were the owners of a piece of real estate on the main street of St. Thomas. This piece of real estate was designated parcel 38A. Parcel 38A adjoined another piece of real estate owned by co-defendant Sharp Properties, Inc. (Sharp). Sharp's property was designated parcel 38. Sharp had leased parcel 38 to co-defendant Ari, which, in turn, had subleased the property to co-defendant Bared.

The plaintiffs initiated suit based upon the assertion that they were entitled to a prescriptive easement over a portion of parcel 38. The case was originally brought in the Territorial Court of the Virgin Islands in 1983, but was later transferred to the District Court of the Virgin Islands on February 9, 1987.

The case immediately proceeded to a non-jury trial with a Special Master presiding. On February 13, 1987, a proposed settlement agreement was read into the record in open court.

Each party made a separate statement on the record indicating their position with respect to the proposed settlement agreement.[1] The parties intended that the statements made in the presence of the court would be transposed into a formal written agreement soon after the proceeding. The parties, however, failed to mutually agree upon terms which they felt accurately reflected the statements that had been made in open court.

The meaning of the statements made by the respective parties is the sole issue presented by the plaintiffs' motion.[2] The plaintiffs allege that the Plaintiffs' Written Agreement for Mutual Settlement,[3] which the plaintiffs and co-defendant Sharp have signed, accurately reflects the agreement to which all the parties consented at the February 13, 1981 proceeding.[4] The plaintiffs assert that because the Plaintiffs' Written Agreement for Mutual Settlement accurately reflects the settlement agreement made in open court, the court must

---

[1] The transcript of this proceeding appears in Appendix A of this opinion.

[2] The authenticity of the transcript of the proceeding has not been disputed by any of the parties.

[3] The text of the Plaintiffs' Written Agreement for Mutual Settlement appears at Appendix B of this opinion.

[4] Plaintiffs' Supplemental Brief to its Motion for Entry of Judgment at 3.

enter judgment against the nonsignatory co-defendants Bared and Ari.[5]

Bared and Ari, however, contend that the Plaintiffs' Written Agreement for Mutual Settlement goes well beyond the oral representations made at the court proceeding.[6] Furthermore, Bared and Ari argue, the oral representations made at the proceeding did not constitute a settlement agreement.[7] Bared and Ari contend that because the Plaintiffs' Written Agreement for Mutual Settlement does not accurately reflect the representations made in open court, and because no settlement was ever reached, judgment cannot be entered in favor of the plaintiffs.[8]

## II. DISCUSSION

■■ A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. Rosso v. Foodsales Inc., 500 F. Supp. 274, 276 (E.D. Pa. 1980); see also Hobbs v. American Investors Management, Inc, 576 F.2d 29 (3d Cir. 1978). In this circuit, "an agreement to settle a lawsuit, voluntarily entered into is binding upon the parties whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).

■■ The construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally. See e.g. Plymouth Mutual Life Insur. Co. v. Illinois Midcontinent Life Insur. Co., 378 F.2d 389 (3d Cir. 1967); Florida Educ. Ass'n v. Atkinson, 481 F.2d 662 (5th Cir. 1973). The local law generally applicable to contracts in the Virgin Islands is the Restatement (Second) of Contracts. Ventura v. Pearson, 17 V.I. 107, 111 n.2 (Terr. Ct. St. C. 1987).

■■ The only essential prerequisite for creation of a valid contract is that the parties mutually assent to the terms and conditions of the agreement. Id. at 111; Pugh v. Super Fresh Food Markets Inc., 640 F. Supp. 1306, 1308 (E.D. Pa. 1986) (citing Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801, 802 n.1, 803

---

[5] Id. at 3–4.

[6] See Memorandum in Opposition to Motion for Entry of Judgment of Bared Jewelers of the V.I., Inc. at 2–3.

[7] See id. at 2–5.

[8] See id. at 6.

(3d Cir. 1962). The manifestation of mutual assent almost invariably takes the form of an offer by one party which is accepted by the other party. Ventura, 17 V.I. at 111 (citing Restatement (Second) of Contracts § 22).

 An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24. Assent is completed only upon acceptance of the offer by the offeree. Id. §§ 35(1), 36. An offer is accepted if, and only if, the terms of the acceptance mirror those of the offer. See Id. §§ 35(2), 36(a)(1), 38, 39.

## III. ANALYSIS

In the case sub judice, there is a question as to whether all the parties mutually assented to the terms and conditions expressed at the proceeding before the Special Master. According to the transcript, the attorney for the plaintiffs, who addressed the court initially, stated that he would outline the plaintiffs' understanding of the proposed agreement. The plaintiffs' understanding of the agreement was that "[e]ach party would grant the other an easement over that portion of the right of way that l[aid] within the boundary of the granting party's property."

After the plaintiffs' attorney read the proposed agreement into the record, the Special Master asked the other parties whether they agreed with the proposal. The attorney for co-defendant Sharp agreed, and added that co-defendants Bared and Ari had "agreed to the continuation of the access that was agreed upon in the June 1984 stipulation, and that [Sharp] specifically reserve[d] [its] right to continue [the] arbitration of [its] cross-claim over and against . . . Bared . . . and [Ari]."

Although the attorney for Bared stated that Bared and Ari "ha[d] no objection on the settlement," the attorney for Ari later commented that "Bared and Ari Corporation d[id] not acknowledge any liability or any involvement or participation in whatever easement that may have been formed by the recognition of the easement of the parties in the settlement."

These two statements contradict each other. The first statement clearly evinces the unconditional assent of Bared and Ari to the terms of the proposed settlement agreement. The second statement, however, appears to negate this assent. The meaning of these statements, when taken together, is therefore unclear.

232

■ Because the meaning of these statements is unclear, the court is unable to determine whether Bared and Ari assented to the terms of the settlement agreement as proposed by the plaintiff. The resolution of this case, however, is not dependant upon the assent of Bared and Ari to the terms of the proposed settlement agreement.

■ The terms of the agreement at issue were proposed to facilitate the creation of mutual easements in Parcels 38 and 38A. An easement, by definition, consists of an aggregate of rights possessed by one person with respect to land *owned by* another. 3 R. Powell & P. Rohan, Powell on Real Property 34–31 ¶ 407 (1952) (emphasis added).

■ Parcel 38A is owned by the plaintiffs. Parcel 38 is owned by co-defendant Sharp. Co-defendants Bared and Ari do not possess an ownership interest in either property. Because Bared and Ari do not possess an ownership interest in either property, their assent to the proposed settlement agreement is unnecessary.

■ The proposed settlement agreement can be enforced as long as the *owners* of Parcels 38 and 38A agree to its terms. The owners of Parcels 38 and 38A, the plaintiffs and co-defendant Sharp respectively, assented to the terms of the proposed settlement agreement. Both parties signed the Plaintiffs' Written Agreement for Mutual Settlement and are bound by its terms.[9]

## IV. CONCLUSION

In accordance with the foregoing discussion, the plaintiffs' Motion for Entry of Judgment shall be granted pursuant to the terms articulated in the Plaintiff's Written Agreement for Mutual Settlement.

## ORDER

AND NOW, this 27th day of March, 1991, upon consideration of the plaintiffs' Motion for Entry of Judgment, and for the reasons set forth in the foregoing memorandum, it is ORDERED that:

1. The plaintiffs' Motion for Entry of Judgment is GRANTED.

2. Judgment is entered enforcing the settlement in accordance with the terms of the Written Agreement for Mutual Settlement attached hereto.

---

[9] The terms of the Plaintiffs' Agreement for Mutual Settlement are, of course, subject to the legal formalities necessary for the creation of easements.

## APPENDIX A

THE CLERK: Isidor Paiewonsky Associates, et al, versus Sharp Properties Inc., et al, and Sharp Properties Inc., versus West Indies Corporation and Ari Corporation.

ATTORNEY GRUNERT: Ready for the Plaintiff.

ATTORNEY WATTS: Ready for Sharp Properties.

ATTORNEY SHELBY: Ready for Bared.

ATTORNEY BUTLER: Ready for Ari Corporation.

ATTORNEY GRUNERT: Your Honor, the parties have reached an agreement in principal to settle this case, which they intend, forthwith, to work into a formal written agreement—more detailed than the outline I will read now. I would now like to outline what my understanding is of the agreement that we have reached and have you inquire whether the parties agree to it.

Each party would grant the other an easement over that portion of the right of way that lies within the boundary of the granting party's property. The right of way is shown on a site plan prepared by Peter Brill, and would be defined as follows:

The east border of the right of way would be the western building line of the existing buildings, now located on parcel number 38 or a continuation of such building line area where the buildings do not now exist.

The west border would be a line parallel 12 feet west of the side building line, except for the existing easement at the northerly end where the two buildings are already closer than 12 feet where it would be from the existing building to the existing building.

The northern end of the right of way would be the existing northern boundary adjacent to Dronningens Gade or Main Street of the existing easement.

The south end of the right of way would be the existing property lines of parcels number 38 and 38a, adjacent to the Waterfront access road from the southwest corner of the existing building on 38 or an extension of that building line up to the boundary, and from that southwest corner to a point of the Sharp's Properties, 12 feet west of that point.

The actual construction of an improvement passageway would not be necessary until some major construction is proposed on the Sharp's Property. Until then, the parties would continue to operate substantially as they have been doing under the stipulation entered on June 4, 1984. When the time comes to improve the passageway,

234

the Paiewonskys would share in it as a joint project for which the parties would share the expenses.

Now, there have been certain modifications of the right of way as shown on this site plan, and I have marked from points A to B on the Sharp's side of the right of way, they would have the right to cantilever out of the right of way a second and third story from points A to B that I have shown here, not more than 4 feet from over the right of way, and at a level that would not be lower than 13 feet above the ground surface of the right of way. I have marked on the Paiewonsky's side of the right of way—I've marked points C and D. Between Points C and D, the Paiewonsky's would have the right to cantilever the second and third stories of their building out over the right of way in a distance not exceeding 4 feet and also not lower than 13 feet above the ground level of the right of way.

I have marked on the drawing points E and F, which are the beginning and the end of the existing right of way. Over the existing right of way, between points E and F, the Sharps would have to build a second and third story out over the entire width of that existing right of way. Again, at a level not lower than 13 feet above the ground level of the right of way.

Mr. Watts, I believe that covers the—

ATTORNEY WATTS: I believe the—

ATTORNEY GRUNERT: —basic out—

ATTORNEY WATTS: I believe the only thing in that statement, that developmental expenses were to be shared equally.

THE COURT: Of the passageway.

ATTORNEY WATTS: Before we leave that point, Mr. Grunert, do you agree?

ATTORNEY GRUNERT: Yes. The expenses of improving the right of way would be equally shared.

ATTORNEY WATTS: Thank you.

THE COURT: I think he said that.

ATTORNEY GRUNERT: Now, on the southwestern corner of the Sharp's property, this is shown on Exhibit 5, a wedge-shaped encroachment of a flower bed—that's a brick flower wall—a wall of a flower bed encroaches onto the Sharp's property for some small distance. The Paiewonskys acknowledge that easement—I'm sorry, acknowledge that encroachment and agree that they will remove that encroachment at any time within 120 days of written notice.

Now, Your Honor, as I mentioned, we intend to reduce to a formal written agreement with additional details, that being the basic out-

line. In the event that we cannot, as sometimes happen, when you try to negotiate a detailed agreement, additional disagreements can possible arrive. If for any reason we are not able to come to a written agreement based on this outline to which every party would agree, then we would intend to come back and ask you to complete the hearing of the issues in the case. We hope that wouldn't happen. But until we have—

THE COURT: I knew I should have never let Judge Christian appoint—

ATTORNEY GRUNERT: —until we have a final written agreement—until all the parties—

THE COURT: I guess that survives the expiration of my term. I can't get rid of the—

ATTORNEY GRUNERT: If I may suggest—if we can't do it within three weeks we should presume that we have reached a longer head and come back to you.

THE COURT: Mr. Watts, you have heard the representation of Mr. Grunert, that is the agreement of your client?

ATTORNEY WATTS: Yes, Your Honor. I would also understand that with regard to the pending matters involving the Ari Corporation, and as to Mr. Bared, that they have agreed to the continuation of the access that was agreed upon in the June 1984 stipulation, and finally, that we specifically reserve our right to continue our arbitration of our cross-claim over and against Mr. Bared's company and Mr. Kimelman's company.

THE COURT: Mrs. Shelby?

ATTORNEY SHELBY: We have no objection on the settlement. We understand that Mr. Watts is reserving his right of cross-claim. We would like to know if you would like to act as our arbitrator?

THE COURT: We will cross that bridge when we get to it. Miss Butler?

ATTORNEY BUTLER: Your Honor, I believe the only other matter is that Bared and Ari Corporation do not acknowledge any liability or any involvement or participation in whatever easement that may have been formed by the recognition of the easement of the parties in the settlement.

THE COURT: What's our next Exhibit number? I think it's 23. We will have that map referred to as part of the settlement agreement as Plaintiff's Exhibit 23. It will remain part of the Record with representations by Counsel.

I will ask Mr. Fischer, Mrs. Cassinelli, Mr. Kimelman, Mr. and Mrs. Sharp, and Mr. Bared, each of you raise your right hands and be sworn.

ATTORNEY GRUNERT: Perhaps they would like to look at the point in the map.

THE COURT: Leave it on the witness stand. Mr. and Mrs. Bared, up there. Mr. and Mrs. Sharp, not Bared. Mr. and Mrs. Sharp, Mrs. Cassinelli, Mr. Bared and Mr. Kimelman, are you ready to take your oaths?

WALTER FISCHER, THEODORE SHARP, ELIZABETH SHARP, LOUIS BARED, ANNA CASSINELLI, and HENRY KIMELMAN, after having been produced and first duly sworn, testified as follows:

THE COURT: I will ask you as a group then I will ask each of you to respond individually. The question will be number one, have each of you heard the representations of your Lawyers, and for the Record, so that it will be understood of course, onto Mrs. Cassinelli, on behalf of Isidor Paiewonsky Associates Corporation as President, Walter Fischer, West Indies Corporation, Mr. and Mrs. Sharp, Sharp Properties, Mr. Bared, Bared Jewelers, and Henry Kimelman, ARI Corporation, each of you have heard the representations of your Lawyer as with respect to the settlement. Mr. Fischer?

MR. FISCHER: I agree.

THE COURT: Mr. Kimelman?

MR. KIMELMAN: I agree.

THE COURT: Mrs. Cassinelli?

MRS. CASSINELLI: I agree.

THE COURT: Mr. and Mrs. Sharp?

MR. SHARP: I agree.

MRS. SHARP: I agree.

THE COURT: Mr. Bared?

MR. BARED: I agree.

THE COURT: If you would prepare a settlement it is to be understood that the agreement that have been represented by your Attorney is in fact the agreement of each of you and by which on the understanding it is reduced to writing, it is agreed that each of you are willing to live by it, and it is accepted by you Mr. Bared?

MR. BARED: I agree.

THE COURT: Mr. Sharp?

MR. SHARP: I agree.

237

THE COURT: Mr. Sharp?

MR. SHARP: I agree.

MRS. SHARP: I agree.

THE COURT: Mrs. Cassinelli?

MRS. CASSINELLI: I agree.

THE COURT: Mr. Kimelman?

MR. KIMELMAN: I agree.

THE COURT: Mr. Fischer?

MR. FISCHER: I agree.

THE COURT: Any other questions?

ATTORNEY GRUNERT: You might want to mention the three weeks limit.

THE COURT: There is a three week limitation before you come back, right?

ATTORNEY STOUT: Either that or before.

ATTORNEY WATTS: Judge, I have already committed to Mr. Grunert and to Mr. Stout that I will devote whatever remaining time we have today to assist in putting as much meat on the bones as we possibly can.

THE COURT: Everybody, when are the Sharps suppose to be leaving?

MRS. SHARP: The 19th.

THE COURT: Plenty of time to get it down. I thank all of you. I appreciate what you have done. Last night, 5:15, I asked all the Lawyers to come in and see if there was any way we could avoid what was expected today and probably next Tuesday, and through the good graces of each of your Lawyers and the willingness of Mr. and Mrs. Sharp and Mrs. Cassinelli, and with the assistance of Mr. Bared, the footwork began, and the people, as you all are reasonable people in Court, as we said, have agreed to resolve without coming to Court. We thank each of you.

ATTORNEY BUTLER: Thank you for your patience.

\* \* \*

## REPORTER'S CERTIFICATE:

I, Avlyne Adams, an Official Court Reporter for the Territorial Court of the Virgin Islands, do hereby certify, that I have reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the trial in the case of ISIDOR PAIE-

WONSKY ASSOCIATES, INC., and L.S. HOLDING, INC., versus SHARP PROPERTIES, INC., BARED JEWELERS OF THE VIRGIN ISLANDS, INC., and ARI CORPORATION, and SHARP PROPERTIES INC., versus WEST INDIES CORPORATION AND ARI CORPORATION, in said Court, on this the 13th day of February 1987.

I further certify that the foregoing 11 pages constitutes the official transcript of said proceedings as taken from my machine shorthand notes.

IN WITNESS WHEREOF, I have subscribed my name, this the 17th day of February 1988.

Avlyne Adams,
Official Court Reporter

## APPENDIX B

PLAINTIFFS' WRITTEN AGREEMENT FOR MUTUAL SETTLEMENT

AGREEMENT dated _____, 1988 among ISIDOR PAIEWONSKY ASSOCIATES, INC. (herein called "IPA"), a Virgin Islands corporation, L.S. HOLDING, INC. (herein called "LSH"), a Virgin Islands corporation, SHARP PROPERTIES, INC. (herein called "SPI"), a Delaware corporation, ARI CORPORATION (herein called "ARI"), a Virgin Islands corporation, and BARED JEWELERS OF THE V.I., INC. (herein called "BJI"), a Virgin Islands Corporation.

1. IPA hereby grants an easement (as more fully described below) to SPI, its successors, assigns, tenants, concessionaires, and licensees (including ARI and BJI during the terms of their respective leases and concession agreements), over that portion (designated "Easement Z") of the right-of-way shown on the Survey dated 2/17/87 by Charles A. Hamilton & Associates, Inc. (herein called the "Survey" and filed under P.W.D. No. A9-347-T87 ) that lies on Parcel No. 38A Dronningens Gade, Charlotte Amalie, St. Thomas, Virgin Islands.

2. SPI hereby grants an easement (as more fully described below) to IPA, its successors, assigns, tenants, concessionaires, and licensees (including LSH during the term of its lease), over that portion (designated "Easement Y") of the right-of-way shown on the Survey that lies on Parcel No. 38 Dronningens Gade.

3. IPA and SPI further agree that the easement previously granted by Theodore Sharp to Isaac Paiewonsky in a certain Deed dated June 1, 1948 and recorded May 1, 1953 in Volume 4E, page 510, No. 147, in the office of the Recorder of Deeds, St. Thomas, Virgin Islands, which is designated "Easement of Record" on the Survey shall be subject to the terms of this agreement.

4. The right-of-way consisting of "Easement Z", "Easement Y", and the "Easement of Record" as shown on the Survey is hereinafter referred to as the "Right-of-Way". The mutual use permitted to be made of the easement over the Right-of-Way by SPI and IPA, their successors, assigns, tenants, concessionaires, and licensees, including ARI, BJI, and LSH during the terms of their respective leases and concession agreements, from the time of the improvement of the Right-of-Way as described below in paragraph 9 shall be as follows:

(a) During customary retail business hours the improved Right-of-Way shall be used solely as a pedestrian walkway (which may include the use of small handcarts for light delivery service).

(b) During times other than customary retail business hours SPI and IPA, their successors, assigns, tenants, concessionaires, and licensees, may use the Right-of-Way for delivery vehicles for the purposes of delivering merchandise to businesses conducting retail sales on either Parcel No. 38 or Parcel No. 38A and delivering supplies and services required for the conduct of such businesses and making repairs and improvements to the buildings on Parcel No. 38 or 38A, including new construction. The parties agree to cooperate in good faith (and to require any other tenants, concessionaires, and licensees to cooperate in good faith) to schedule uses permitted during times other than customary retail business hours so as not to interfere with each other.

(c) During times other than customary retail business hours SPI, its successors, assigns, tenants, concessionaires, and licensees, may use the Right-of-Way for access to enclosed parking areas, if any, on Parcel No. 38 and IPA, its successors, assigns, tenants, concessionaires, and licensees, may use the Right-of-Way for access to enclosed parking areas, if any, on Parcel No. 38A. Any such enclosed parking areas shall have garage doors in a style consistent with the architectural design of adjoining buildings, and such doors shall be kept closed during customary retail business hours.

(d) If the improvements made to the Right-of-Way include gates or other devices to provide security against entry by unauthorized

persons during times other than customary retail business hours, the parties agree to cooperate in good faith (and to require any other tenants, concessionaires, and licensees to cooperate in good faith) to keep such devices secure during such times but to make reasonable provisions for entry by authorized persons and by customers of any businesses on Parcels Nos. 38 or 38A that may remain open for business at times other than customary retail business hours.

5. SPI, its successors, assigns, tenants, concessionaires, and licensees, shall have the right, in connection with constructing second and third stories on any buildings to be built on Parcel No. 38, to cantilever such construction over the Right-of-Way for all or any part of the distance between Point J and Point K as shown on the Survey so long as such cantilever does not extend more than four (4) feet over the Right-of-Way and leaves a clear height of thirteen (13) feet above the surface of the Right-of-Way.

6. IPA, its successors, assigns, tenants, concessionaires, and licensees, shall have the right, in connection with constructing second and third stories on any buildings to be built or renovated on Parcel No. 38A, to cantilever such construction over the Right-of-Way for all or any part of the distance between Point E and Point F as shown on the Survey so long as such cantilever does not extend more than four (4) feet over the Right-of-Way and leaves a clear height of thirteen (13) feet above the surface of the Right-of-Way.

7. IPA and LSH acknowledge that SPI has retained the right to construct second and third stories over all or any part of the portion of the Right-of-Way designated "Easement of Record" from Point A to Point C as shown on the Survey, and SPI, for itself and its successors, assigns, tenants, concessionaires, and licensees, agrees that any such construction will leave a clear height above the surface of the Right-of-Way to the level of the underside of the existing second story floor of the Bolero Building adjacent to the "Easement of Record".

8. Except as provided in paragraphs 5, 6, and 7 above, SPI and IPA, for themselves, their successors, assigns, tenants, concessionaires, and licensees, agree not to engage in or permit any construction on Parcels Nos. 38 and 38A that will in any way encroach within the boundaries of the Right-of-Way, provided that at the second and third floor levels (including the cantilevered sections permitted by paragraphs 5 and 6 above) window sills, window frames, shutters, roof eaves, and rain gutters may extend within the bound-

241

aries of the Right-of-Way a reasonable number of inches to provide a harmonious architectural facade.

9. The parties contemplate that the improvement of the Right-of-Way into an attractive passageway for pedestrian traffic will be done at the time of and in conjuction with major construction on Parcel No. 38, whenever that may occur. For the purposes of this agreement, "major construction shall mean the construction of any building that covers twenty-five percent (25%) or more of the area of Parcel 38 on which there are now no existing buildings. At that time, the parties agree to consult in good faith and select a mutually acceptable architect or designer to prepare a design for the passageway that will enhance the value of the adjoining property on both sides and to cooperate in good faith in arranging for the construction of any improvements to the passageway required to achieve a design acceptable to both. SPI and IPA each agree to bear one-half (½) of the cost of such design and construction and thereafter to bear one-half (½) of the costs of maintenance of the improved passageway, provided that each party to this agreement, or such party's successors or assigns, shall be responsible for any damage to the improved passageway intentionally or negligently caused by itself or its agents, employees, tenants, concessionaires, or licensees.

10. Notwithstanding the foregoing, the parties agree that until major construction is commenced on Parcel No. 38, the parties will continue to conduct their businesses (and will require their successors, assigns, tenants, concessionaires, and licensees to conduct their businesses) in accordance with the following standards:

(a) SPI, ARI, and BJI, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree that they will not interfere during usual and customary business hours with vehicles entering or leaving the waterfront entrance of Parcel No. 38 and crossing that portion of Parcel No. 38 between said entrance and the buildings on the adjoining Parcel No. 38A for the purposes of:

(1) delivering or picking up merchandise, materials, supplies, equipment, furnishings, waste materials, or other items used in the operations of the commercial enterprises conducted on Parcel No. 38A, or

(2) maintaining servicing, or renovating (including additional construction) the buildings, equipment, and furnishings used by such commercial enterprises in the conduct of their businesses (provided that, if substantial renovations or additional construc-

242

tion contemplated hereby require entry through said waterfront entrance of heavy equipment or substantial amounts of construction materials, prior arrangements will be made reasonably satisfactory to the occupants of Parcel No. 38 to avoid interference with the operations of commercial enterprises on parcel No. 38, which may include arrangements for limiting such substantial renovations or additional construction of that nature to the seasons of reduced tourist activity and limiting entry for that purpose to times other than usual and customary business hours).

(b) SPI, ARI, and BJI, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree that they will not interfere during usual and customary business hours with vehicles standing partly on Parcel No. 38 for reasonable periods of time and if reasonably necessary while engaged in such deliveries or pickups (including loading and unloading) or while engaged in maintenance, servicing, or renovating activities.

(c) SPI, ARI, and BJI, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree not to park vehicles on Parcel No. 38A and IPA and LSH, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree not to park vehicles on Parcel No. 38 except for the limited purposes permitted by subparagraph (b) above. SPI, ARI, and BJI, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree that they will not interfere during usual and customary business hours with vehicles entering or leaving the waterfront entrance of Parcel No. 38 and crossing a portion of Parcel No. 38 to park entirely within the boundaries of Parcel No. 38A, provided that the party then occupying Parcel No. 38 shall have been notified by IPA of the identity of the vehicles authorized to park on Parcel No. 38A.

(d) The parties, for themselves and their successors, assigns, tenants, concessionaires, and licensees, agree that they will keep their respective portions of the yard in a clean and neat condition.

11. IPA acknowledges that the planter constructed on the south end of Parcel No. 37 Dronningens Gade encroaches on Parcel No. 38 as shown on Public Works Department Drawing No. C9-276-82 dated March 25, 1982 and that the continued encroachment is with the permission of SPI. IPA agrees at any time upon receipt of written notice from SPI to remove such encroachment at its own expense within sixty (60) days after receipt of such notice.

12. BJI acknowledges that the canopy and its supporting pillars constructed near the southeast corner of the existing building on Parcel No. 38 encroaches on Parcel No. 38A and that the continued encroachment is with the permission of IPA. BJI agrees at any time upon receipt of written notice from IPA to remove such canopy and its supporting pillars at its own expense within sixty (60) days after receipt of such notice.

13. Any dispute between SPI and IPA under this agreement with respect to their joint undertaking under paragraph 9 above for the design, construction, and major renovation of the improved passageway contemplated by paragraph 9 above shall be determined by arbitration. The party requesting arbitration shall, in a written notice to the other party (herein called the "Initial Notice"), name three architects, engineers, or builders actively practicing their professions in St. Thomas and deemed qualified and impartial, any one of whom will be acceptable to said party as a single arbitrator. Within thirty (30) days after receiving the Initial Notice, the other party shall designate in a written notice to the party requesting arbitration either (A) the name of one of such three persons acceptable to such other party as a single arbitrator or (B) the name of some other architect, engineer, or builder actively practicing his profession in St. Thomas and deemed qualified and impartial who will be acceptable to such other party as one of three arbitrators.

(a) If such other party elects (A) above, the arbitration shall proceed promptly before that person as a single arbitrator in St. Thomas at a time designated by such arbitrator in a written notice to both parties not less than thirty (30) days before the time so designated.

(b) If such other party elects (B) above, the party requesting arbitration shall, within thirty (30) days of receiving notice of such election, designate in writing to the other party an architect, engineer, or builder actively practicing his profession in St. Thomas and deemed qualified and impartial who will be acceptable as a second arbitrator to the party requesting arbitration, and the two arbitrators so designated shall promptly select a third, and the arbitration shall proceed promptly before the three arbitrators in St. Thomas at a time designated by them in a written notice to both parties not less than thirty (30) days before the time so designated. (If the party requesting arbitration fails to designate a second arbitrator within the thirty (30) day period allowed above, the arbitrator designated

244

by the other party shall select one of the three persons named in the Initial Notice as the second arbitrator, and the two arbitrators shall select a third and proceed in the same manner as provided above in this subparagraph (b).)

(c) If such other party fails to respond to the Initial Notice within such thirty (30) day period, the party requesting arbitration may designate any one of the three persons named in the original notice as a single arbitrator, and the arbitration shall proceed promptly before that person at a time designated by such arbitrator in a written notice to both parties not less than thirty (30) days before the time so designated.

The written decision of the single arbitrator or a majority of the three arbitrators, as the case may be, shall be binding on both parties and enforceable at law. The single arbitrator or a majority of the three arbitrators, as the case may be, shall determine the time and place of the hearing, the rules of procedure, and the allocation of the expenses of the arbitration. Except as provided hereby, no party to this agreement shall be bound to arbitrate any other dispute arising under this agreement or otherwise except with such party's written consent entered into after the dispute arises.

14. The Initial Notice provided for in paragraph 13 above shall be in writing and shall be deemed effective on delivery to the principal business office of the recipient or upon delivery by any form of mail addressed to the party to be served and requiring a signed receipt. If said delivery is refused or receipt of said notice is not acknowledged, then by personal delivery in the manner prescribed for service of process within this territory or, if made outside this territory, in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction. If mailed, the notice shall be addressed to the recipient as provided in paragraph 15 below.

15. Except as provided in paragraph 14 above, any other notice required or permitted to be given under this agreement shall be in writing and shall be deemed effective on delivery to the principal business office of the recipient or ten (10) days after being postmarked by the United States Postal Service if deposited for mailing in a sealed envelope with proper first class postage affixed for registered or certified mail, return receipt requested, and addressed to the recipient at its mailing address stated below or any other mailing address that the recipient shall have designated by written notice to the other parties:

Isidor Paiewonsky Associates, Inc.
Attn: Avna Paiewonsky
P.O. Box 6280
St. Thomas, Virgin Islands 00801

L.S. Holding, Inc.
Attn: Walter Fischer
P.O. Box 887
St. Thomas, Virgin Islands 00801

Sharp Properties, Inc.
Attn: Theodore E. Sharp
4624 Placidia Avenue
North Hollywood, California 91602

ARI Corporation
Attn: Henry Kimelman
P.O. Box 8240
St. Thomas, Virgin Islands 00801

Bared Jewelers of the V.I., Inc.
Attn: Luis Bared
P.O. Box 1188
St. Thomas, Virgin Islands 00801

16. Upon the execution and delivery of this agreement by all of the parties hereto, (a) IPA and LSH, for themselves and their respective successors and assigns, hereby release and forever discharge SPI, ARI, and BJI, and their respective successors and assigns, of and from any and all claims, demands, or causes of action for prescriptive easements of any nature (including the accrual of any period of alleged adverse use) with respect to Parcel No. 38 Dronningens Gade, Charlotte Amalie, St. Thomas, Virgin Islands, and (b) SPI, ARI, and BJI, for themselves and their respective successor and assigns, hereby release and forever discharge IPA and LSH, and their respective successors and assigns, of and from any and all claims, demands, or causes of action for prescriptive easements of any nature (including the accrual of any period of alleged adverse use) with respect to Parcel No. 38A Dronningens Gade, Charlotte Amalie, St. Thomas, Virgin Islands. SPI, ARI, and BJI expressly reserve to themselves for future resolution their dispute with regard to responsibility among themselves for the alleged prescriptive easement and the costs associated therewith.

17. This agreement may be signed in one or more counterparts and all such counterparts taken together shall constitute one and the

same agreement. This agreement shall be binding on and accrue to the benefit of the successors and assigns of the parties hereto.

IN WITNESS WHEREOF, each party has caused this agreement to be signed on its behalf by its duly authorized officer as of the date first stated above.

Witnesses:

ISIDOR PAIEWONSKY ASSOCIATES, INC.
L.S. HOLDING, INC.
SHARP PROPERTIES, INC.
ARI CORPORATION
BARED JEWELERS OF THE V.I. INC.