**CLIFTON BOYNES, Appellant/Plaintiff,**
**v.**
**TRANSPORTATION SERVICES OF ST. JOHN, INC.,**
**Appellee/Defendant**

S. Ct. Civil No. 2013-0021

Supreme Court of the Virgin Islands

January 17, 2014

454

SAMUEL A. WALKER, ESQ., TEELUCK PERSAD, ESQ., CPLS, P.A., Orlando, FL, *Attorneys for Appellant.*

MARIA TANKENSON HODGE, ESQ., Hodge & Hodge, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(January 17, 2014)

HODGE, *Chief Justice.* Clifton Boynes[1] and Transportation Services of St. John, Inc. ("TSSJ") entered into a mediated settlement agreement ("Agreement") in which Clifton agreed to sell his shares of TSSJ stock back to TSSJ at fair market value ("FMV") in exchange for both parties agreeing to stipulate to a dismissal with prejudice of the litigation pending between them, releasing all claims and counter-claims against one another. In a February 14, 2013 Order, the Superior Court granted TSSJ's motion to enforce the Agreement and ordered Clifton to sell his TSSJ shares to the corporation for $0.00. For the reasons that follow, we affirm in part and reverse in part the Superior Court's February 14, 2013 Order.

---

[1] Because some of the individuals involved in this case possess the same last names, we refer to them by their first names to minimize confusion.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Clifton claims a 50% ownership interest in TSSJ, which is a closely held corporation in the business of providing marine mass transit services in the Virgin Islands. (J.A. 100.) In 1984, the 24th Legislature awarded TSSJ and its counterpart, Varlack Ventures, an exclusive co-franchise to operate passenger ferry services between the islands of St. Thomas and St. John. (*Id.*) In 1994, the Legislature extended the co-franchise for an additional twenty years. (*Id.*) Although a private company, TSSJ provides a public service and operates under a government grant of exclusive franchise, which makes it a public utility under section 1(a)(7) of title 30 of the Virgin Islands Code. As a public utility, TSSJ is regulated by the Public Services Commission ("PSC"). 3 V.I.C. § 273.

In 1975, TSSJ issued Stock Certificate No. 5 to Vashti Boynes, which represented 500 shares of common stock. (J.A. 9-10.) On July 26, 2007, Vashti transferred her ownership of Stock Certificate No. 5 to her son, Clifton. (J.A. 10.) The parties do not dispute that this interest equals a 50% interest in TSSJ's outstanding shares of stock. Clifton attempted to register and record the stock transfer on TSSJ's corporate books but TSSJ refused to recognize his ownership interest, stating that the transfer of shares was invalid. (*Id.*) Clifton filed a complaint against TSSJ in Superior Court on November 26, 2007, alleging conversion and seeking a declaratory judgment that he owned 500 shares in TSSJ. TSSJ denied liability and asserted several counter-claims against Clifton for issues that arose in connection with Clifton's former role as an Officer and Director of TSSJ.[2]

In a February 20, 2009 Order, the Superior Court referred the parties to mediation pursuant to Superior Court Rule 40. (J.A. 42-43.) During mediation, the parties settled their differences and memorialized the terms of the settlement in a written Agreement, which was signed by both parties and their attorneys on March 19, 2009. (J.A. 45-50.) Under the terms of the Agreement, in exchange for the parties dismissing all claims and counter-claims in the pending litigation, Clifton agreed to sell his interest in TSSJ shares, and TSSJ agreed to purchase Clifton's interest in

---

[2] Clifton served as an officer and director of TSSJ from August 1975 to December 2004. (J.A. 24.)

TSSJ shares, at a price equal to the FMV. Clifton was required to "retain Benham & Hodge (or a competent substitute)" and TSSJ was required to "retain Francois Depousoir (or a competent substitute)" to appraise the value of TSSJ shares. (J.A. 47.) The Agreement also specified that, should the parties' respective accountants fail to agree on TSSJ's FMV, then the accountants must "designate a third accountant to prepare a valuation, said accountant to be paid equally by Plaintiff and Defendant [and whose] valuation shall be binding on the parties. . . ." (J.A. 48.) Time was an essential provision of the Agreement, given that the first accountants were to have completed their valuation reports "by May 31, 2009, or as soon as reasonably practical thereafter." (J.A. 47.) The parties' mediator filed a Mediation Report with the Superior Court stating that the dispute was settled "subject to several contingencies that cannot be satisfied until May 31, 2009, at the earliest. Assuming said contingencies are satisfied, the parties will then file the appropriate stipulation of dismissal with prejudice." (J.A. 46.)

Two and a half years later, TSSJ moved the Superior Court to enforce the Agreement, which Clifton opposed. Specifically, TSSJ asserted in its November 30, 2011 motion to enforce the Agreement, and again in its December 28, 2011 reply to the opposition, that it was "entitled to an order enforcing the Mediated Settlement Agreement, with an order directing plaintiff to comply forthwith with all terms thereof, including good faith participation in the appointment of a third independent accountant to prepare a binding valuation as set forth in the Mediated Settlement Agreement." (J.A. 73, 92.) At a subsequent June 21, 2012 hearing, TSSJ argued that the Agreement was enforceable and that the value of the corporation was less than $0.00. Clifton admitted that, based on the "limited records" provided by TSSJ, his accountant also concluded "that the company was broke." (J.A. 173-74.) However, Clifton argued that the Agreement was unenforceable because at the time of signing both parties anticipated some amount of money being exchanged, as Clifton agreed to *sell* the shares, not give them away. (J.A. 157, 160.) The Superior Court determined that the Agreement was enforceable as written and it directed both parties to submit their accountants' report valuing TSSJ stock to the Superior Court to confirm that the corporation's worth was actually $0.00 and to ensure that the accountants had access to all necessary information to accurately appraise TSSJ stock. (J.A. 182, 189-90.)

TSSJ submitted, under seal, a valuation report ("Report") on July 9, 2012, completed by its in-house controller. (J.A. 96.) On July 12, 2012, Clifton submitted a Certification of Attorney stating that his accountant was unable to compile a report because he was not given access to TSSJ's financial data other than financial reports prepared by the corporation's certified public accountant. (J.A. 119.) On February 14, 2013, the Superior Court granted TSSJ's motion, ordering Clifton to transfer his 50% interest in TSSJ stock to TSSJ in exchange for $0.00 and dismissing the case with prejudice. (J.A. 127.) Clifton filed a timely notice of appeal on March 15, 2013. (J.A. 192-93.)

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). The Superior Court's February 14, 2013 Order fully adjudicated all issues between the parties, qualifying as a final appealable order.

This Court applies plenary review to the Superior Court's application of law, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). "[T]he appellate court must accept the factual determination of the fact finder unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " *Id.* at 329 (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-92 (3d Cir. 1992)).

### B. The Mediated Settlement Agreement

Clifton and TSSJ entered into an Agreement on March 19, 2009, whereby Clifton agreed to sell to TSSJ and TSSJ agreed to buy from

Clifton, Clifton's interest in TSSJ stock at FMV.[3] The issue that is properly before this Court is whether the Superior Court had the authority to entertain a motion to enforce the Agreement and, if so, whether it enforced the agreement correctly. Clifton argues that (1) the Superior Court did not have the authority to enforce the Agreement, (2) TSSJ breached the covenant of good faith and fair dealing in its performance of the Agreement, and (3) the Superior Court erred in ordering Clifton to sell his shares to TSSJ for $0.00.

### 1. Superior Court's Authority to Enforce a Mediated Settlement Agreement

■ A mediated settlement agreement is an enforceable contract governed by basic contract principles. *See Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013); *Welch & Forbes, Inc. v. Cendant Corp.*, 233 F.3d 188, 192-93 (3d Cir. 2000); *Mattingly v. Cardow Jewelers*, Civ. No. 2000-045, 2002 U.S. Dist. LEXIS 7424, *2 (D.V.I. App. Div. Apr. 15, 2002) (unpublished); *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 761 F.Supp. 1231, 1233, 26 V.I. 228 (D.V.I. 1991); *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985). A trial court has "inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court." *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) ("This circuit has long recognized the broad, inherent authority and equitable power of a [trial] court to enforce an agreement in settlement of litigation pending before it. . . .'" (citation omitted)); *Autera v. Robinson*, 419 F.2d 1197, 1200, 136 U.S. App. D.C. 216 & n.9 (D.C. Cir. 1969) (collecting cases). A settlement agreement also "can be enforced by an ordinary action for

---

[3] In an October 22, 2013 motion, Clifton asked this Court to defer or postpone oral argument and consideration because control of TSSJ was being litigated in a separate case before the Superior Court. At oral argument, Clifton orally moved to withdraw his motion to hold this case in abeyance, which was not opposed by TSSJ. Therefore, we grant Clifton's motion to withdraw and we will not consider the supplemental argument asserting Clifton's lack of ownership in TSSJ stock on the merits.

Of course, if the Agreement is deemed enforceable and Clifton is unable to deliver the promised 500 shares of stock to TSSJ, then such failure may give rise to a breach of contract claim. *See Herman v. Bank of Nova Scotia*, Civ. No. 2002-0163, 2012 U.S. Dist. LEXIS 142896, *19 n.2 (D.V.I. Sept. 28, 2012) (unpublished).

breach of contract."[4] *VoiceStream Minneapolis, Inc. v. RPC Props., Inc.,* 743 N.W.2d 267, 271 (Minn. 2008) (citation omitted); *see also, e.g., Forbes v. Clooney,* 31 V.I. 28, 31 (V.I. Super. Ct. 1994) (plaintiff sued for breach of contract based on alleged settlement agreement). When parties voluntarily enter into a written settlement agreement it "is binding and conclusive." *Powell v. Omnicom,* 497 F.3d 124, 128 (2d Cir. 2007); *Beazer East, Inc. v. Mead Corp.,* 412 F.3d 429, 436 (3d Cir. 2005) (a mediated settlement agreement "is not binding unless it is reduced to writing"). Though parties reach "a settlement agreement during mediation, rather than during litigation, [it] does not lessen the binding nature of the agreement on the parties." *D.R. v. East Brunswick Bd. of Educ.,* 109 F.3d 896, 901 (3d Cir. 1997). .

 In a February 20, 2009 Order, the Superior Court referred Clifton and TSSJ to mediation pursuant to Superior Court Rule 40. SUPER. CT. R. 40(b)(1). It is undisputed that Clifton and TSSJ were able to successfully mediate their differences, resulting in a written Agreement, signed by both parties and their attorneys. *See* SUPER. CT. R. 40(f)(2) ("If an agreement is reached, it shall be reduced to writing and signed by the parties and their counsel, if any.") Thus, the Agreement is binding on both parties and one party cannot now refuse to be bound by the Agreement simply because it is no longer deemed beneficial to that party.[5] *Fid. & Guar. Ins. Co. v. Star Equip. Corp.,* 541 F.3d 1, 5 (1st Cir. 2008) ("a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply" (citation omitted)); *see United States v. City of New Orleans,* 731 F.3d 434, 439 (5th Cir. 2013) ("A settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced." (citation omitted)). To permit such behavior

---

[4] While the general practice is to allow a party to enforce a settlement agreement during a pending case, some courts reject this approach and require a party to file a separate breach of contract claim to enforce a settlement agreement. *See Mantas v. Fifth Ct. of Appeals,* 925 S.W.2d 656, 658 (Tex. 1996) ("[A] written settlement agreement may be enforced though one party withdraws consent before judgment is rendered on the agreement. [However,] the party seeking enforcement must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof." (citing *Padilla v. La France,* 907 S.W.2d 454, 461-62 (Tex. 1995)).

[5] In order to protect his interests, Clifton could have negotiated a minimum payout per share in case the fair market value was calculated lower than the price he was willing to sell at (the same way TSSJ apparently negotiated different payment options in case the fair market value was calculated higher than it was able to promptly pay in cash).

would undercut the strong public policy of encouraging settlement agreements. *See Federal Trade Comm'n v. Actavis, Inc.*, 133 S.Ct. 2223, 2226, 186 L. Ed. 2d 343 (2013) (collecting case law recognizing "a general legal policy favoring the settlement of disputes"); *East Brunswick Bd. of Educ.*, 109 F.3d at 901 ("public policy wisely encourages settlements" (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215, 114 S. Ct. 1461, 128 L. Ed. 2d 148 (1994)); *Mattingly*, 2002 U.S. Dist. LEXIS 7424 at *2. Although the parties reached an Agreement, certain contingencies were not met and Clifton and TSSJ never filed a stipulation of dismissal with the Superior Court.[6] *Compare Dankese*, 693 F.2d at 14-16. Therefore, the Superior Court acted well within its authority when it entertained TSSJ's motion to enforce the settlement agreement, as the case was still pending, giving it inherent authority to "supervise and enforce [the] settlement agreement[]." *Id.* at 15.

### 2. Enforcement of the Agreement

Clifton and TSSJ agreed to comply with the specific covenants and procedures set forth in the Agreement. Clifton agreed to sell his 50% interest in the outstanding shares of stock of TSSJ to TSSJ at FMV. Clifton and TSSJ also laid out in the Agreement a detailed process for determining FMV. Both parties agreed to hire specific accountants, at their own expense, to determine the FMV of TSSJ stock. Both Clifton and TSSJ promised to "make all books and records available to the accountants." (J.A. 47.) The accountants were to complete their valuation reports "by May 31, 2009, or as soon as reasonably practical thereafter." (*Id.*) If the accountants' valuations of TSSJ's shares differed, and the parties could not agree on a firm FMV, then the accountants were required to consult with one another in an attempt to agree upon a firm FMV. In the event that the accountants could not agree, then they were to "designate a third accountant to prepare a valuation," who was to be paid equally by Clifton and TSSJ. The parties' first two accountants were required to

---

[6] Rather, it appears the parties intentionally retained the Superior Court's jurisdiction until the terms of the Agreement had been satisfied. The parties met with the Superior Court to update it on their progress in fulfilling the Agreement's terms twice; once at an April 26, 2010 jury status hearing and again at a November 9, 2011 status conference (where it was decided that TSSJ would file a motion with the Superior Court seeking to enforce the Agreement). (J.A. 58, 67.)

share their work product with the third accountant, and then the third accountant's valuation of TSSJ shares would be binding on both parties. (J.A. 48.) TSSJ promised to pay Clifton, in cash, for the value of his shares within 30 days of the date the FMV of TSSJ stock had been determined. If it was not possible for TSSJ to pay in cash, then TSSJ was required to seek bank financing and if bank financing was unobtainable, the parties would discuss a payment plan, using the help of a mediator if necessary. (*Id.*)

■ Neither Clifton nor TSSJ abided by the promises, terms, or procedures as stated in the Agreement. Clearly, no valuations of the shares were accomplished by any accountant by the May 31, 2009 deadline or shortly thereafter. The only evidence provided to the Superior Court regarding the value of TSSJ stock was the Report prepared by TSSJ's in-house controller, (J.A. 98-116), and Clifton's Certification of Attorney that TSSJ did not make all the necessary books and records available to his accountant to perform a proper evaluation. (J.A. 119.) Clearly, the parties did not adhere to the terms of the Agreement for determining the FMV of TSSJ stock. Clifton argues that TSSJ breached the covenant of good faith and fair dealing by refusing to make all of its books and records available, by only giving records that would show a negative value, and by submitting to the Superior Court a valuation report that omitted critical information. (Appellant's Br. 10-11.) We need not reach the issues of whether TSSJ breached its duty of good faith and fair dealing or the intricate legal aspects of determining FMV of shares of a closely held corporation, as we conclude that the Superior Court erred in its February 14, 2013 enforcement order by mandating the sale of TSSJ stock for $0.00 instead of first enforcing the Agreement's terms laying out the process for determining the proper FMV of TSSJ stock.

■ Both Clifton and TSSJ were to have their designated accountants complete an appraisal of the FMV of TSSJ stock by May 31, 2009 or as soon thereafter as reasonably practical. However, as of November 30, 2011, when TSSJ moved the Superior Court to enforce the Agreement, neither party had completed an appraisal. It was not until after the entry of the Superior Court's July 5, 2012 Order that TSSJ completed its in-house report and Clifton never completed a report or had his

accountant explain why the report could not be completed.[7] In a February 13, 2013 Order, the Superior Court enforced the Agreement and ordered Clifton to transfer his TSSJ stock to TSSJ for $0.00 based on the attorneys' representations and TSSJ's Report. However, "unsworn representations of an attorney are not evidence," *Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011), and the Report was prepared by TSSJ's in-house controller, who was not shown to be a competent substitute for Francois Depousoir, the accountant named in the Agreement. The language of the Agreement clearly indicates that the parties contemplated using independent accountants, which is supported by the specifically named accountants in the Agreement, as well as by TSSJ's representation to the Superior Court at the November 9, 2011 hearing that "the reason there is not a written appraisal is that it actually lacks the funds to pay for a formal appraisal. [TSSJ has] been forced to base it's [sic] analysis on indications from its accountant." (J.A. 133.) In this situation, and as contemplated by the Agreement, a TSSJ employee is not a comparable substitute for an independent certified public accountant, who would apply his or her professional expertise and judgment in an objective, independent, and formal analysis of TSSJ's operations, books and records to determine the FMV of TSSJ stock.

Specifically, Clifton contends that TSSJ's Report was invalid because it did not consider TSSJ's goodwill, government subsidies, effects of better management, dividend-paying capacity, its franchise, and the FMV of TSSJ's assets. (Appellant's Reply Br. 2-3, 11.) TSSJ maintains the Report is an accurate analysis of TSSJ's net worth and that it discusses all of the factors Clifton complains about. The Report mentions that the government subsidies, while generally appropriated, "are inconsistent in amount and timing of receipt." (J.A. 105.) It notes that the franchise division is the "heart of the business" but because the rates are set by the PSC it usually has a negative rate of return. (J.A. 103-04.) Also, the

---

[7] The Superior Court rejected Clifton's assertion that his accountant did not receive the necessary information to prepare a report, stating that the Certification of Attorney did "not indicate what steps, if any, the accountant made between March 19, 2009, the date of the parties' agreement, and July 5, 2012, [the date the Superior Court entered its Order requiring the parties to file their accountants' report,] to secure the information. Nor does the Certification indicate that Defendant obstructed Plaintiff's access to that data. . . . To allow Plaintiff to further delay implementation of the settlement agreement would unconscionably reward him for breaching his obligations under the parties' pact." (J.A. 125.)

franchise is set to expire on May 31, 2016, which, if not renewed, will probably end the company. (J.A. 105.) Allegedly, TSSJ has a book value of negative $1.9 million dollars. (*Id.*) Its fixed assets total about $1.76 million and its total debt equals approximately $4 million; it owes the bank, the Internal Revenue Service, the Virgin Islands Bureau of Internal Revenue, and other accounts payable. (*Id.*) While TSSJ's Report mentions several factors that impact TSSJ's net worth, it does not provide a detailed numerical analysis regarding specifically how the corporation's earnings, assets, debts, and other less tangible factors impact the value of the company. Although TSSJ may have a tremendous amount of debt, as a closely-held corporation and a public utility, TSSJ reasonably may have some value[8] and both tangible and intangible factors must be considered when appraising the FMV of TSSJ stock.

■ The complexity and nuances of determining a FMV for a closely-held and family operated corporation[9] highlights Clifton and TSSJ's disagreement over the FMV of TSSJ stock and points to the need for the parties to proceed to the final step of the agreed-upon evaluation process: the selection of a third accountant to prepare the final binding valuation.

■■ Because both parties failed to comply with the procedures outlined in the Agreement, it was impossible for the two accountants to

---

[8] TSSJ is apparently still operating, meaning it has earnings and is paying wages. It owns tangible assets, has an exclusive government franchise, and receives government subsidies.

[9] When assessing a closely-held corporation, the majority of courts refer to a list of factors derived from the Internal Revenue Service's Revenue Ruling 59-60. *Litman v. United States*, 78 Fed. Cl. 90, 117 (Fed. Cl. 2007); *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 389 n.8 (2d Cir. 2006); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1462 (5th Cir. 1986). These factors are: "(1) the nature and history of the business, (2) its particular economic outlook and that of its industry generally, (3) the book value of the stock and the financial condition of the business, (4) the company's earning capacity, (5) its dividend paying capacity, (6) its goodwill and other intangible assets, (7) other sales of the corporation's stock, and (8) the market price of stock of comparable corporations." *Amodio v. Amodio*, 70 N.Y.2d 5, 509 N.E.2d 936, 936-37, 516 N.Y.S.2d 923 (1987) (citing Rev. Rul. 59-60, 1959-1 C.B. 237), *see also*, Edwin T. Hood et al., *Valuation of Closely Held Business Interests*, 65 UMKC L. Rev. 399 (1997); James L. Rigelhaupt, Jr., *Valuation of Stock of Closely Held Corporations*, 2 AM. JUR. PROOF OF FACTS 2D 1, §§ 2-15 (updated Sept. 2013). This list is neither exhaustive nor is any one factor dispositive, as each closely-held corporation is unique and an analysis of its net worth should be tailored to the individual corporation. *Estate of Ford v. Comm'r*, 53 F.3d 924, 928 (8th Cir. 1995), *aff'g* T.C. Memo 1993-580, 66 TCM (CCH) 1507 (1993) ("the weight to be given to each of the many valuation factors depends upon the facts of each case" (citation omitted)).

agree upon a firm FMV for TSSJ's stock that the parties could accept. The valuation process to arrive at an ultimate FMV was a critically important provision of the Agreement that needed to be enforced as established by the parties. Importantly, the Superior Court never conducted an evidentiary hearing to create a record from which to resolve the disputed issues of fact concerning the parties' compliance or non-compliance with the terms of the agreement, including timeliness, production of books and records, retention of the designated accountants or comparable substitutes, and continued disagreement as to the FMV of TSSJ stock, requiring a third accountant to establish a definitive binding value. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002) (If there is a factual dispute regarding the settlement agreement, then "the court must 'conduct a plenary evidentiary hearing in order to resolve that dispute.' " (citation omitted)); *Fid. & Guar. Ins. Co.*, 541 F.3d at 5 (citing *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999) (when a dispute as to the settlement agreement arises before the original suit is dismissed, "the party seeking to enforce the agreement may file a motion with the trial court . . . [and it] may summarily enforce the agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement")); *see Robbie*, 469 So. 2d at 1385 (trial court correctly enforced settlement agreement because the disputed provision in agreement was non-essential). At best, the Superior Court could have concluded that some preliminary investigations indicated that the value of TSSJ stock was in the negative, but that Clifton clearly disputed that the ultimate value of the stock could be $0.00 or less. In accepting the disputed representations of the parties, the Superior Court enforced an alleged ultimate FMV, arrived at through a truncated valuation process which was not in conformity with the Agreement.

■■■ ■■■ Instead of accepting the proffered valuation provided by TSSJ's in-house controller and ordering the transfer of TSSJ shares for $0.00, the Superior Court should, in the absence of an evidentiary hearing, have enforced the terms of the Agreement, requiring the parties to comply with the appraisal process and, at a minimum, move on to the next stage of the established appraisal procedure by retaining a third

independent accountant.[10] This third independent accountant, having access to all of TSSJ's books and records and the work product of the other two accountants, if any, would be required to determine a FMV for TSSJ stock that would be binding on both parties. If either party were to fail to perform their obligations under the Agreement then Superior Court Rule 40(f)(3), which is identical to Florida's Rule of Civil Procedure 1.730(c),[11] would grant the Superior Court the authority to "impose sanctions, including costs, attorney fees, or other appropriate remedies including entry of judgment on the agreement." SUPER. CT. R. 40(f)(3); *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 407 & n.13 (V.I. 2008); *Lazy Flamingo, USA, Inc. v. Greenfield*, 834 So.2d 413, 414-15 (Fla. Dist. Ct. App. 2003) (where case was still pending before trial court, court had authority to enforce a mediated settlement agreement and award attorney's fees under Rule 1.730(c) of the Florida Rules of Civil Procedure); *Croteau v. Operator Service Co. of So. Fla.*, 721 So.2d 386, 387 (Fla. Dist. Ct. App. 1998) (Rule 1.730(c) of the Florida Rules of Civil Procedure grants trial courts the authority to enter judgment on a mediated settlement agreement). Hence, the Superior Court may exercise its contempt and sanction power should either party continue to evade the terms of their Agreement or cause unreasonable delay. *See* SUPER. CT. R. 40(f)(3); *Bell v. White*, 55 A.D.3d 1211, 867 N.Y.S.2d 729, 733 (N.Y. App. Div. 2008) (trial court did not abuse its discretion when it used its contempt power to force one party to participate in the agreed upon appraisal process, including the selection of a third accountant to determine the FMV of some stock).

---

[10] This is exactly the relief requested by TSSJ in its November 30, 2011 and December 28, 2011 memoranda in support of its motion to enforce the Agreement, that the Superior Court require Clifton to comply with all terms of the Agreement, including the appointment of a third independent accountant to prepare a binding valuation. (J.A. 73, 92.)

[11] In cases "where a Virgin Islands statute is patterned after a statute from another jurisdiction, the borrowed statute shall be construed to mean what the highest court from the borrowed statute's jurisdiction, *prior* to the Virgin Islands enactment, construed the statute to mean." *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 380 (V.I. 2013) (citing *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011) (citation omitted) (emphasis in original)). Also, "when a court in the Virgin Islands promulgates a local rule that contains identical language to a rule adopted by a court in another jurisdiction, the Virgin Islands court may interpret the rule the same way as the other jurisdiction." *In re Disbarment of Plaskett*, 56 V.I. 441, 447 (V.I. 2012) (citation omitted).

Therefore, we remand the case so that the Superior Court can require the parties to produce evidence of a third accountant's report determining the FMV of TSSJ shares in accordance with established procedures for appraising a closely-held corporation. The third accountant's determination shall be binding on the parties and shall be based upon full disclosure of all necessary information, as contemplated by the Agreement. (J.A. 47.) The parties shall also comply with the Superior Court's order in a timely manner or face whatever sanctions, if any, the Superior Court deems appropriate under Rule 40(f)(3).

## III. CONCLUSION

The Superior Court did not err in concluding that it had the authority to enforce the parties' Agreement. However, we find that the Superior Court erred in ordering Clifton to sell his TSSJ shares for $0.00 without the parties having first exhausted the procedure for determining the FMV of those shares. Instead, the Superior Court should have enforced the terms of the entire Agreement by requiring the parties to complete the specified valuation and appraisal process by retaining a third independent accountant to establish a binding FMV, in light of the fact that the parties disagreed as to a firm FMV of TSSJ stock. Therefore, we reverse the Superior Court's order and remand the matter to the Superior Court with instructions that it administer the appointment of a third accountant to independently appraise the FMV of TSSJ stock under strict deadlines, as contemplated under the Agreement.