**HILLARY TOUSSAINT, Appellant/Defendant**
**v.**
**AUGUSTINE STEWART, Appellee/Plaintiff**

S. Ct. Civil No. 2016-0031

Supreme Court of the Virgin Islands

August 29, 2017

933

DESMOND L. MAYNARD, ESQ., SHAWN E. MAYNARD-HAHNFELD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, USVI, *Attorneys for Appellant.*

CLIVE C. RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 29, 2017)

SWAN, *Associate Justice.* Appellant, Hillary Toussaint, seeks reversal of a judgment of the Superior Court of the Virgin Islands along with its accompanying order and findings of fact and conclusions of law, all of which were entered on May 24, 2016. The judgment and order granted a motion by Appellee, Augustine Stewart,[1] to dismiss Toussaint's amended answer and counterclaim. Toussaint also seeks reversal of an interim order entered on October 30, 2013, which denied his motion to enforce a mediated settlement agreement. For the reasons elucidated below, the order, judgment, and findings of fact and conclusions of law are reversed and vacated and the matter is remanded for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Prior to the commencement of this action, the same parties had been involved in a forcible entry and detainer ("FED") action, case number ST-08-CV-504, that sought to remove Toussaint from parcel 3-83 Estate Bovoni, Quarter No. 1 & 2 Frenchman's Bay Qtr., St. Thomas, Virgin Islands ("Property"). In that case, the court concluded that Toussaint had asserted sufficient facts to raise the issue of his potentially having an equitable interest in the Property. Specifically, the court determined that Toussaint "raised a colorable defense requiring construction of an

---

[1] For clarity's sake, we note the familial relationships of the parties and several of the witnesses. Hillary Toussaint, Appellant, and Phillip Toussaint are son and father, respectively. They are married to two sisters respectively, namely Ann Thomas-Toussaint and Teresa Toussaint, who are the daughters of Appellee Augustine Stewart. Therefore, Augustine Stewart is the mother-in-law of both Appellant Hillary Toussaint and Philip Toussaint.

agreement" between himself and Alfredo Lima, the record title holder of the Property until Lima deeded the Property to Stewart on July 1, 2008. The court further observed that Toussaint "may or may not have a valid claim to an equitable interest in the property," but he had "presented no documentary proof of an interest in the property[.]"

On May 29, 2009, Stewart filed a verified complaint in the Superior Court of the Virgin Islands. In that complaint, Stewart alleged that, as of July 21, 2008, she is the "rightful" owner of the Property. As evidence of her ownership, Stewart provided a copy of a duly recorded warranty deed from Lima, through his attorney-in-fact, Lydia Lima Luton. Stewart then stated that the defendant, Toussaint, was in possession of the Property and that Toussaint had no right to be in possession thereof. Moreover, Stewart asserted that Toussaint "presents himself as the owner of the premises" and that he collects rents from several tenants thereon. As relief, Stewart requested that the court order Toussaint to vacate the Property and grant complete possession of the Property to her.

On July 22, 2009, Toussaint filed his answer in which he denied that Stewart was the record title holder of the Property and raised as an affirmative defense that he had "a legal and/or equitable interest" in the Property that was superior to Stewart's.

On October 6, 2010, Stewart filed a motion for injunctive relief. On March 9, 2011, the trial court conducted a hearing on Stewart's motion for preliminary injunction. At the hearing, Toussaint's attorney, reciting the conclusion of the Superior Court in the FED action, stated that "the question as to whether or not [Toussaint] had an equitable interest in the property should be resolved in a civil action with full discovery and not in the context of a summary FED proceeding."

Stewart's first witness was Ann Thomas, Stewart's daughter and the estranged wife of Toussaint, who testified that she and Lima entered into a contract for the purchase of the property in September of 2004 but did not include Toussaint as a party to that contract. Stewart then testified on her behalf. She testified that she gave Thomas $15,000 to pay Lima as a partial payment for the Property and that Thomas then instructed Toussaint to pay Lima $800 each month.

Toussaint also testified at the hearing. He testified that he and Thomas were married in 1997 and were separated in 1999. Toussaint indicated that he had been incarcerated in the British Virgin Islands from January 2009 until February 2011. Toussaint further testified that on October 21, 1995, he

and Lima had agreed that Toussaint would rent the Property. To corroborate the existence of this rental agreement, a receipt for $250 with the notation that it was "paid on debt on house lot" was entered into evidence. Toussaint also established that he made multiple payments of $800 monthly totaling $24,900 towards the purchase price of the property, which were confirmed by a record of payments. Toussaint also testified that he had cleared the Property and had built three structures on it. Toussaint further entered into evidence a document signed by Lima and dated February 15, 1997, which confirmed that Lima had given Toussaint permission to build on the Property. Toussaint also entered into evidence his application to the Virgin Islands Water and Power Authority in which he sought to have electricity connected to the property, which subsequently occurred.

On cross-examination, Toussaint admitted that he had never received a deed for the Property and had no written contract for its purchase. Toussaint also contradicted his prior testimony when he was asked if the payments he had made were for rent, and he responded that they were. On redirect, Toussaint again reiterated that the $800 monthly payments were for the purchase of the Property and not for rental payments. Toussaint also introduced in evidence during redirect examination a hand written agreement signed by him and Thomas.

At the end of the hearing, the trial judge informed Toussaint that his answer did not comply with the requirements of sections 284 and 283 of title 28 of the Virgin Islands Code. Then, on May 27, 2011, Toussaint filed a counterclaim against Stewart. In his counterclaim, Toussaint alleged that he was in possession of the Property and had, with legal authority, constructed a dwelling thereon. He further alleged that, prior to the warranty deed from Lima to Stewart, Toussaint and Lima had consummated an agreement whereby Toussaint would purchase the property and, in furtherance thereof, he had paid a substantial amount of money.

On June 6, 2011, Stewart filed a motion to dismiss Toussaint's counterclaim. Stewart sought to have Toussaint's counterclaim dismissed pursuant to section 284 of title 28 and Superior Court Rules 33 and 34. Stewart argued that Toussaint (1) "failed to file a counterclaim exerting a claim of interest in the subject property," (2) "served Plaintiff with a Counterclaim without request for leave of court to do so," and (3) "failed to allege any interest in the subject [property] in the form of a complaint/counterclaim" as required by section 284 of title 28.

In opposition, Toussaint argued that he was in possession of the property and had legally constructed a home on the Property where he had resided since 1995. He further alleged that, prior to the warranty deed granting the property to Stewart, Toussaint and Lima had consummated an agreement in which Toussaint agreed to purchase the property and had paid $36,400 to Lima. To substantiate his contention, Toussaint attached a "Statement of Account" as an exhibit.

A bench trial was held on November 6, 2013. At this hearing, the trial judge acknowledged that, following the preliminary injunction hearing, Toussaint had filed a counterclaim asserting his claimed equitable interest in the property. Though it observed that the counterclaim was filed in response to the trial court's directive, the court found the filing to be "a nullity" and that "there's really nothing before the court to dismiss" because Toussaint had not sought leave to file the counterclaim. As justifications for the dismissal the court found that Toussaint's conduct failed "to allow [the opposing] party to respond" and that it was unclear "what [Toussaint is] claiming against Miss Stewart in this counterclaim." In trying to discern the basis for the counterclaim prior to dismissing it, the court asked "what in your proposed counterclaim sets forth anything against Miss Stewart?" In response, Toussaint stated that he was prepared "to defend in this case against the Complaint that was filed[.]" At this juncture, the court dismissed the counterclaim because Toussaint had not filed any motion with the court requesting leave to amend his pleading. Therefore, the court proceeded to trial on the original complaint and answer.

Stewart testified first. She asserted that Thomas wanted to purchase the Property from Lima but had no money; therefore, Stewart loaned her $15,000. Stewart had to pay $800 monthly, but later she testified that Thomas was to pay the $800 monthly toward the Property's purchase. The warranty deed for the property was then admitted into evidence.

Thomas then testified. Thomas stated that she had lived in Massachusetts since 1999, but prior to that, she lived on St. Thomas, residing in either her mother's residence at 3C Estate Bovoni or her husband's residence on the Property.

Continuing, Thomas testified that on September 10, 2004, she entered into a contract with Lima in order to purchase the Property for $74,000, and Stewart gave Thomas $15,000 as a loan to pay towards the purchase price. At the time the contract was executed, Thomas stated that she and Toussaint were still married. The agreement was then entered in evidence

as Exhibit 2, as was a receipt for the initial $15,000 down payment as Exhibit 3. Thomas further testified that it was her intention to live on the Property with Toussaint when she purchased it — but that this was "before the domestic violence" poisoned their relationship. Thomas then testified that she and Toussaint did not reside on the Property in 1999, that they were not living there when she signed the contract of purchase in 2004, and moreover, that they had never lived together on the property.

Thomas also explained that Exhibit 4, dated September 10, 2004, was a document she wrote, which stated that, if she should die, the Property was to devolve to Toussaint and their four children and directed Toussaint to continue making the monthly payments on the property. The document further acknowledged debts owed to Stewart and to Theresa Toussaint. Thomas signed the document, and it was witnessed by Toussaint and his father, Phillip Toussaint, the husband of Theresa Toussaint, Thomas' sister. Thomas testified that she had asked her sister Theresa Toussaint, who is also her husband's step-mother, to collect any rent from the Property and deposit it into a local savings account held by Thomas, who lived in Boston. Thomas further testified that following this instruction, Theresa Toussaint collected rents for Thomas but was consistently late in collecting and paying the monthly payments due to Lima.

Continuing her testimony, by letter dated September 28, 2007, Thomas indicated that Lima, through his agent, informed Thomas that there were several delinquent or unpaid payments regarding the Property. Then, she testified that in 2008, Stewart had asked for Thomas to repay the $15,000 Stewart had lent her in 2004 to purchase the Property. Thomas testified further that she then returned to St. Thomas in 2008 to resolve any problems regarding the purchase of the property. She indicated that soon after her return, she had asked Theresa Toussaint for the funds in the savings account and was informed that Toussaint, her husband, had been collecting the funds from rentals on the Property and retaining the money.

Lydia Lima Luton, the president of The Dvergesten Company, which is the property management company in charge of the Property, was the next person to testify. According to her testimony, she was a witness to the 2004 contract for the sale of the Property, which was not a sale on behalf of Dvergesten Co., but on behalf of Lima. However, she proffered that Lima suffers from Alzheimer's disease, and that Luton is his attorney-in-fact with a power-of-attorney to act on Lima's behalf. Following the 2004 contract, Luton testified that Thomas fell into arrears on her payments,

and that Luton sent her a letter requesting a meeting to discuss the payments. From these discussions, Luton informed that Thomas had requested that the Property be deeded to Stewart. Luton specified that Toussaint was not involved with the 2008 contract with Stewart. Having reviewed the receipts and records, Luton did recall that Toussaint and Thomas had leased the property "back in those years" and "were always behind on payments" "when they used to lease the land." She remembered that Theresa Toussaint would sometimes deliver payments, and that Toussaint would also pay via money orders, but neither Lima nor the company had "any type of rental relationship with Mr. Toussaint," though she recalled that, prior to the contract of sale, "Mr. Toussaint sometimes sent in money orders as payments towards the rental of the property." To Luton's knowledge, Lima never entered into a contract with Toussaint to sell the property to him. Further, Luton testified that on June 15, 2004, Lima gave Toussaint 30 days' notice to quit the Property.

Throughout the proceedings of this matter, the parties engaged in mediation efforts. On February 5, 2013, Stewart communicated what Toussaint argued was an offer to sell the Property to him for a purchase price of $50,000.[2] On February 25, 2013, Toussaint communicated what he asserted to be an acceptance of this offer. On February 26, 2013, Stewart sent a letter to Toussaint withdrawing the alleged offer to sell the Property. In ruling on Toussaint's motion to enforce this agreement, the trial court concluded that no contract, either oral or memorialized in writing, existed concerning the Property because the parties had not agreed to form and timing of payment and because Toussaint had only said that he expected to raise the funds to effect the purported sale.

## II. JURISDICTION

■■ This Court has jurisdiction over all appeals arising from a "Final Order" of the Superior Court. 4 V.I.C. § 32(a). "A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012) (citations omitted); *see generally Penn v. Mosley*, 67 V.I. 879, 891 n.4 (V.I. 2017) (discussing the

---

[2] In her opposition to Toussaint's motion seeking enforcement of the settlement agreement, Stewart asserted this was not an offer, but "simply an inquiry to see where the matter stood."

distinctions between a judgment, order, and decree); *Miller v. Sorenson*, 67 V.I. 861, 872 (V.I. 2017) (discussing the distinctions between a judgment and decree). The entry of a Final Order implicitly denies all pending motions. *Simpson v. Bd. of Dirs. of Sapphire Bay Condo. W.*, 62 V.I. 728, 731 (V.I. 2015). The Final Order from which Toussaint appeals was entered May 24, 2016, and the notice of appeal was filed June 23, 2016. Therefore, this Court has jurisdiction to hear this appeal, which was timely filed. V.I. R. APP. P. 5(a)(1); *see Billu v. People*, 57 V.I. 455, 461 n.3 (V.I. 2012) (noting that, where an amended rule utilized the same language as the rule in effect at the time the notice of appeal was filed, the amended rule is applied); *cf. Webster v. FirstBank Puerto Rico*, 66 V.I. 514, 519 n.3 (V.I. 2017) (applying former rules of the Superior Court in effect at the time the judgment was entered); *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 548 n.13 (V.I. 2015) (applying version of statute in effect at the time the action was commenced).

## III. STANDARD OF REVIEW

■ Toussaint identifies two issues for consideration on appeal. First, Toussaint argues that the trial court's striking of the amendment to his answer in order to convert one of his affirmative defenses to a counterclaim in compliance with section 284 of title 28 of the Virgin Islands Code and the application of sanctions in section 284, which mandated the exclusion of evidence of Toussaint's claimed interest in the Property, was an abuse of discretion. Second, Toussaint argues that the trial court abused its discretion when it denied his motion to enforce an alleged mediated settlement agreement.[3]

The trial court's construction of a statute is subject to plenary review. *Bradford v. Cramer*, 54 V.I. 669, 672 (V.I. 2011). The standard of review for this Court's examination of the trial court's application of the law is plenary, and its findings of fact are reviewed for clear error. *Rodriguez v.*

---

[3] Although Toussaint failed to designate the October 30, 2013 order denying his motion to enforce the mediated settlement agreement, V.I.R. APP. P. 4(c) ("The notice of appeal shall ... designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal."), we nonetheless exercise jurisdiction over that order because it merged with the Final Order. *See In re Estate of George*, 59 V.I. 913, 919 (V.I. 2013) ("It is well established that prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders . . . may be reviewed on appeal from the final order." (citation and internal quotation marks omitted)).

940

*Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2013), *overruled in part on other grounds by Mosby v. Mullgrav*, 65 V.I. 261, 264 (V.I. 2016); *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010). A trial court's grant or denial of leave to amend a pleading is reviewed for abuse of discretion. *Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 517 (V.I. 2015). To the extent the decision to deny or grant leave to amend rested on the interpretation of a statute, however, this Court's review is plenary. *Id.* at 518.

## IV. DISCUSSION

This was an action brought for recovery of possession of real property and is therefore governed by 28 V.I.C. §§ 281-294. Section 284 of title 28 makes the requirements of section 283 applicable to a defendant's answer in an action to recover possession of real property, requiring that "the nature and duration" of the estate be pled "with the certainty and particularity required in a complaint." 28 V.I.C. §§ 283-84.[4] Section 283(2) requires that the nature of the estate in the property be accurately described stating whether it is in fee simple, a life estate, or some other interest. 28 V.I.C. § 283(2). Additionally, Superior Court Rule 34 requires that any claim "in the nature of recoupment, set-off, cross-action, or any other claim for relief" must be asserted in the defendant's answer as a counterclaim "and not otherwise." SUPER. CT. R. 34. Despite these requirements, in his answer, Toussaint asserted his "legal and/or equitable interest" in the Property by what was labeled an affirmative defense.[5]

Certainly an equitable interest in real property can arise from a multitude of circumstances, *see, e.g., Drayton v. Drayton*, 65 V.I. 325, 336

---

[4] The full text of section 284 is as follows:

> The defendant shall not be allowed to give in evidence any estate in himself or another in the property, or any license or right to the possession thereof, unless the same is pleaded in his answer. If so pleaded, the nature and duration of such estate, or license, or right to the possession shall be set forth with the certainty and particularity require in a complaint.

28 V.I.C. § 284.

[5] Even though this Court promulgated the Virgin Islands Rules of Civil Procedure, which went into effect on March 31, 2017, *see* Promulgation Order No. 2017-0001, 2017 V.I. Supreme LEXIS 22 (Apr. 3, 2017), and Superior Court Rule 34 has since been repealed, *see* Promulgation Order No. 2017-0006, 2017 V.I. Supreme LEXIS 23 (Apr. 7, 2017), we continue to apply the former procedural rules on appeal because the final judgment in this case was entered before the effective date of either promulgation order. *Blyden*, 53 V.I. at 658 n.15.

941

(V.I. 2016) (defining the marital homestead); *Walters v. Parrott*, 58 V.I. 391, 401-03 (V.I. 2013) (holding that contribution to the household over a protracted period of cohabitation entitled an unmarried partner to a long-term relationship to an equitable interest in the home), and the failure to give comparable detail in a pleading as one would plead regarding the nature and duration of a life estate or an estate in fee simple is a failure to comply with sections 284 and 283. At the March 9, 2011 hearing, the trial court specifically stated that

> Mr. Toussaint has asserted his interest in the property, but the remainder of Section 284 of Title 28 has not been plead in the answers [sic]. So the answers [sic] are going to have to be amended to clarify that and to conform to Section 284.

In response to this, on May 27, 2011, Toussaint filed a counterclaim against Stewart alleging that (1) he was in possession of the Property, (2) he had, with legal authority, constructed a dwelling thereon, and (3) that, prior to the warranty deed from Lima to Stewart, he had paid a substantial amount of money in furtherance of an agreement Toussaint and Lima had consummated whereby Toussaint would purchase the property. The foregoing occurred within the case context of having had a prior FED action dismissed because "the question as to whether Toussaint has an equitable interest in the property should be resolved in a civil action with full discovery and not in the context of a summary FED proceeding." These facts present a situation in which two laudable principles of this Court come into conflict, and it is these facts that dictate the outcome of this appeal.

█ We have established that a trial court need not exercise its discretion where a party fails to meet the test necessary to invoke such discretion. *See Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 711-13 (V.I. 2010) (finding no abuse of discretion where the trial court denied a motion for extension of time to serve process because the plaintiff had failed to put forth an argument establishing good cause); 5 V.I.C. § 740(5) (requiring that "the affirmative of the issue" be proved). In contrast, we have also held that errors induced by the trial court's actions, even if unintentional, should not be borne by litigants. *See, e.g., Miller v. Sorenson*, 67 V.I. 861 (V.I. 2017). Considering, in light of the language in Rule 8 authorizing "the court" to amend a pleading, that the FED hearing was specifically dismissed to allow Toussaint to present his claim of interest in real property because the FED court lacked subject matter jurisdiction, and the trial

942

court's admonition to Toussaint that "the answers are going to have to be amended," a party could readily have concluded that no motion was required in order to file an amended answer and counterclaim. Even though these facts present a close decision, we hold that the trial court abused its discretion when it struck Toussaint's amended pleading.

## A. Because Superior Court Rule 8 Does Not Preclude Allowing the Amendment and There was No Undue Delay or Undue Prejudice to Stewart as a Result of Toussaint's Delay in Filing the Amendment, the Superior Court Abused its Discretion When it Struck Toussaint's Amended Answer and Counterclaim and Applied Section 284's Sanction of Exclusion of Evidence of Toussaint's Interest in the Property.

■■ The Rules of the Superior Court, like the Federal Rules of Civil Procedure, are designed "to secure the just, speedy, and inexpensive determination of every action," *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (citation omitted), and this is evidenced in the similar phraseology of the Superior Court Rules. SUPER. CT. R. 1(a) (mandating that the rules "be liberally construed to secure simplicity and uniformity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."); *see, e.g.,* SUPER. CT. R. 7, 12, 27(b), 29, 31, 32(b), 36(b), 38, 39(a), 50.[6] At the time of entry of the order from which this appeal was taken, practice in the Superior Court was governed by Superior Court Rule 8 provided as follows:

> The court may amend any process[7] or pleading for any omission or defect therein, or for any variance between the complaint and the evi-

---

[6] Pursuant to Act No. 7888, passed on July 30, 2016, this Court issued Promulgation Order 2017-0001 in which it promulgated the Virgin Islands Rules of Civil Procedure and repealed "all Rules of the Superior Court inconsistent with [these newly promulgated rules]." This Court further issued Promulgation Order 2017-0006 in which Superior Court Rules 1 and 7 were amended and rules 12, 27, 29, 31, 36, 38, 39, and 50 were repealed specifically. While we apply the standard for the procedural rule in effect when the order currently being challenged was entered, going forward those Rules of the Superior Court that are repealed no longer dictate the procedure, and the Virgin Islands Rules of Civil Procedure apply. V.I. R. CIV. P. 1-1(c)(2). For comparison, *see, e.g.,* V.I. R. CIV. P. 1 (mandating that the rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); 16(a)(1), (2), (3), and (5).

[7] Process is the trial court's citation/writ by which a person is "formally called upon by a court of competent jurisdiction to give information to it, in an adversary proceeding against

943

dence adduced at the trial. If a party is surprised as a result of such amendment, the court shall adjourn the hearing to some future day, upon such terms as it shall think proper.

SUPER. CT. R. 8.[8] While amendment pursuant to Superior Court Rule 8 is not amendment as a matter of right and granting leave to amend is reposed in the sound discretion of the trial court, *Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011); *see Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 (V.I. 2011), when "justice so requires" is the mandate of the liberal rule of pleading amendments articulated in Superior Court Rule 8. *See Foman*, 371 U.S. at 182; *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011). Under this standard, amendment should be allowed in order to provide an opportunity to have any requests for relief considered on the merits, if the assertions in the proposed amendment are the proper subject for relief. *See Foman*, 371 U.S. at 182. More succinctly, when the pleading presents a proper claim for relief, leave to amend should be freely given. *Id.*

██ Superior Court Rule 8 allows a pleading to be amended at any time during a civil proceeding. *See Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005); SUPER CT. R. 8 (mandating that a continuance be granted if an amendment during trial surprises the opposing party).[9] The language of Rule 8 specifically allows "the court"

---

him . . . ." *Kennard v. Louisiana ex rel. Morgan*, 92 U.S. (2 Otto) 480, 482, 23 L. Ed. 478 (1875); BLACK'S L. DICT., at 1242 ("A summons or writ, esp. to appear or respond in court — Also termed judicial process; legal process."). Process must inform of when and where to answer, the time in which return of service of process must be made, and other essential information to constitute due process of law. *Kennard*, 92 U.S. at 482; V.I.R. CIV. P. 4(a) (requiring that the summons bear the official markings of the court and be directed to the defendant and identify the court and parties while stating the time limit for response and the consequences of a failure to respond), (e)(1) ("delivering a copy of the summons and **complaint**" (emphasis added)). Even with proper names, Due Process does not demand ideal accuracy. *Grannis v. Ordean*, 234 U.S. 385, 395, 34 S. Ct. 779, 58 L. Ed. 1363 (1914); SUPER CT. R. 26, *superseded by* V.I.R. CIV. P. 8-1. In determining if a misnomer is a fatal defect, the totality of what is provided in the documents served and other relevant circumstances are considered. *Grannis*, 234 U.S. at 397 ("[W]e need not confine ourselves to the test of idem sonans, nor to the appearance of the name in print, but may employ both of these, with such additional tests as may be available in view of what is disclosed in the record.").

[8] Pursuant to Promulgation Order No. 2017-0001, Virgin Islands Rules of Civil Procedure 15 and 15-1 now govern amendment to pleadings.

[9] Because Superior Court Rule 8 does not provide any standard by which the trial court should exercise its discretion, we consult case law interpreting Federal Rule of Civil Pro-

to amend any pleading[10] "for any omission or defect" or "for any variance between the complaint and the evidence adduced at the trial." Moreover, Rule 8 requires the court to continue the matter to a future date to allow sufficient time for any party who is surprised by an amendment to properly prepare and respond to the amendment, even if that surprise occurs during trial itself. SUPER. CT. R. 8 ("If a party is surprised as a result of such amendment, the court **shall** adjourn . . . to some future day[.]" (emphasis added)).[11]

The trial court concluded that the amended answer and counterclaim was "really a nullity" because it was not accompanied by a motion for leave to amend; therefore, by the trial court's reasoning, there was "nothing before the court to dismiss." The trial court's view of the filing as a nullity indicates that the trial court concluded it had no discretion to allow an amendment pursuant to Superior Court Rule 8 when leave to amend was not sought by motion. The plain text of Rule 8 does not support this interpretation, and nothing in its language precludes the trial court's exercise of discretion to allow the amendment under the circumstances of this case.[12]

■ ■ Superior Court Rule 8 allows "the court," as opposed to "a party," to amend pleadings and contains no requirement that a motion be

cedure 15. *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 275 n.11 (V.I. 2012); *Pedro*, 63 V.I. at 522 n.1 (Gomez, D.J., concurring in part and dissenting in part).

[10] A pleading is "A formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." BLACK'S L. DICT., at 1191; *cf.* V.I. R. CIV. P. 7(a)(1-10) (adumbrating the specific documents that constitute an authorized pleading in the Superior Court of the Virgin Islands).

[11] Toussaint did not advance this reasoning in the trial court, and although he asserts in his brief that he advanced this argument at the hearing on March 9, 2011 (Appellant's Brief, p. 20), the Court has been unable to find any language on either the page cited by Toussaint or anywhere else in the record that could possibly be understood as presenting this argument. Further, Toussaint fails to cite to Superior Court Rule 8 on appeal. Matters not adequately raised at the trial level and matters not adequately briefed in this Court are waived. *See Gardiner v. Diaz*, 58 V.I. 199, 207 (V.I. 2013) ("Because Gardiner had an opportunity to raise his counterclaim before the magistrate — but failed to do so — we consider the matter waived." (citing V.I.S.CT. R. 4(h); *Bacon v. McGarry*, 71 Fed. Appx. 19, 21 (10th Cir. 2003)).

[12] As discussed in more detail below, the facts of this Case reasonably allowed Toussaint to believe a motion was unnecessary because he had already been ordered to file the amendment. As Toussaint's actions clearly indicate he did not believe he was making a request for an order of the court and had, instead, been ordered to file his amended pleading, we do not rely on these rules to resolve this matter.

submitted as a prerequisite to seeking an amendment. Rule 8 categorically authorizes the trial court to amend any pleading for any omission or defect and specifically dictates that a party who is surprised by this amendment be given an appropriate amount of time to prepare and respond. SUPER. CT. R. 8 (mandating that "the court shall adjourn the hearing to some future day"). Moreover, amendment is allowed even after trial has commenced. This mandatory language regarding continuances and Rule 8's reference to the court rather than a party indicate that, under Rule 8, the trial court has immense discretion to allow an amendment when justice requires. Accordingly, to the extent the trial court's ruling striking the amended answer and counterclaim relied on an interpretation of Rule 8 that required dismissal because the amended answer and counterclaim was not preceded by a motion for leave to amend, this was an abuse of discretion. *See, e.g.*, *Pedro*, 63 V.I. at 518 (finding an abuse of discretion in denying leave to amend due to incorrect legal interpretation).

■ Further, the trial court supported its striking of the amended answer and counterclaim by reasoning that the procedures of the court are "designed to allow a party to respond." This statement appears to consider both prejudice to the party opposing the granting of leave to amend and undue delay. While it is true that the standard for amendment of pleadings articulated in Rule 8 is extremely liberal and strongly favors the granting of leave to file an amended pleading, the trial court has discretion to deny leave to amend due to reasons such as undue delay, bad faith or dilatoriness, repeated failures to correct any deficiencies in the pleading, futility of amendment, undue prejudice to the moving party, etc. *See Foman*, 371 U.S. at 182; *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 392-93 (7th Cir. 2000); *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

■ The passage of time alone is not undue delay. *Pedro*, 63 V.I. at 523 (Gomez, D.J., concurring in part and dissenting in part). Delay in seeking to amend a pleading becomes undue when allowing the amendment places an unwarranted burden on the trial court. *Id.* (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Whether allowing an amendment to a pleading will unduly burden the trial court involves consideration of the number of opportunities to amend that have been **granted** by the trial court, the reasons for and purposes of prior amendments, the stage of the litigation, and other appropriate factors relating to the trial court's management of the case specifically and its

946

docket and procedures generally. *See id.* at 523-25 (collecting cases); *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101-02 (2d Cir. 2002); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160-61 (9th Cir. 1989).

In *Harvey*, 55 V.I. at 577, this Court discussed considerations relating to a determination of whether there had been an undue delay in seeking leave to amend a pleading. The respondent had filed an answer to a divorce petition in which she expressly waived a claim for alimony. *Id.* The petitioner had been granted leave to amend his divorce petition, and the amendment prompted a change in the relief desired by the respondent. *Id.* However, in the order granting leave to amend the petition, the trial court directed the respondent to file an amended answer to the amended petition within twenty days, which she failed to do. *Id.* Further, the respondent would have sought alimony in her amended pleading, and this claim would have required discovery in addition to the discovery conducted prior to the requested leave to amend at the time of trial. *Id.* Therefore, at the time of trial, it was not an abuse of discretion for the trial court to find that the respondent's motion to amend was untimely. *Id.*

 In keeping with the intent and spirit of the rules of the Superior Court governing pleadings and amendments, decisions on the merits are favored, and dismissal of claims "on the basis of such mere technicalities" are to be avoided. *Foman*, 371 U.S. at 181.[13] Courts should look beyond the nominal label given by a party to the substance of what is being asked. *Bryan v. Fawkes*, 61 V.I. 416, 467 n.30 (V.I. 2014) (citing *Anthony v. FirstBank V.I.*, 58 V.I. 224, 228 n.5 (V.I. 2013)); *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611-12 (V.I. 2012) (citing *Joseph*, 54 V.I. at 648 n.2); *Penn*, 67 V.I. at 899 (citing *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007)). Importantly, in this case, Toussaint did raise his claim that he had an equitable interest in the Property in a timely manner

---

[13] *See Arvidson v. Buchar*, Case No. ST-16-CV-410, 2017 V.I. LEXIS 4, at *8 (V.I. Super. Ct. Jan. 11, 2017); *St. Thomas & St. John Police Benevolent Ass'n v. V.I.P.D.*, Case No. ST-15-CV-115, 2016 V.I. LEXIS 132, at *9 (V.I. Super. Ct. Aug. 31, 2016); *Clarke v. Pan Am. Invs., Inc.*, Case No. ST-15-CV-645, 2016 V.I. LEXIS 86, at *4 (V.I. Super. Ct. Jul. 5, 2016); *Adams v. N.W. Co. (Int'l), Inc.*, 63 V.I. 427, 446 (V.I. Super. Ct. 2015); *cf. Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 298 (V.I. 2014); *Joseph v. Bureau of Corr.*, 54 V.I. 644, 650 (V.I. 2010); *Spencer v. Navarro*, S. Ct. Civ. No. 2007-69, 2009 V.I. Supreme LEXIS 25, at *4 (V.I. Apr. 8, 2009) (*per curiam*) (unpublished); *Deal Furniture & Appliance v. Four Winds Plaza P'ship*, 961 F. Supp. 117, 120, 36 V.I. 151 (D.V.I. App Div. 1997).

when he filed his answer and affirmative defenses. *See* 28 V.I.C. §§ 283-84; *e.g.*, *Drayton*, 65 V.I. at 338; *Walters*, 58 V.I. at 401.

Moreover, Stewart did respond to Toussaint's amended answer and counterclaim; she moved to dismiss it because it was not accompanied by a motion. Additionally, unlike in *Harvey*, 55 V.I. at 577, where new discovery was necessary for the relief sought in the amended pleading, the parties to this matter were relying on the same evidence to prove or disprove their asserted interests in the Property. Luton testified that she is both the president of the corporation that manages the properties that were owned by Lima and Lima's attorney-in-fact.[14] Therefore, she was legally authorized to conduct Lima's personal business affairs unconnected with the management corporation. She further testified that she had Lima's business records in her possession. Luton was competent to be a witness, FED. R. EVID. 601, *see* FED R. EVID. 801(d)(2)(C), 615(b), and had personal knowledge of the matters of both the management corporation and Lima's business dealings regarding the parties and the Property, FED. R. EVID. 901(a), (b)(1), (2), and (8), 602, 1007. She also had custody and control of the documentary evidence that would have provided the facts necessary to resolve the issue in this case, FED. R. EVID. 803(6)-(7), 1007.[15] Toussaint had filed his amendment to his answer on May 27, 2011, but the trial court did not address this issue until trial on November 6, 2013.[16] The parties had no discovery schedule until the hearing on March 9, 2011. With Toussaint's amended answer and counterclaim filed on May 27, 2011, and no new discovery required because of the

---

[14] "Attorney. 1. Strictly, one who is designated to transact business for another; a legal agent. — Also termed attorney-in-fact; private attorney." BLACK'S L. DICT., at 138.

[15] The Court is perplexed as to why both parties failed to depose Luton prior to trial, V.I. SUPER. CT. R. 39(a), 38 (repealed); *cf.* V.I. R. CIV. P. 30, 31, and failed to subject her to a subpoena *duces tecum* requiring her to produce in court the records relating to the various transactions between and among Lima on the one hand and Stewart, Thomas, and Toussaint on the other, SUPER. CT. R. 11(a), (c) (2016); *cf.* SUPER. CT. R. 11(a) (2017) ("Rule 45 of the Virgin Islands Rules of Civil Procedure shall govern issuance and compliance with subpoenas in all cases, both civil and criminal."), V.I. R. CIV. P. 45(e)(1)(A)-(B) (2017), Form 16-C (Sample Business Records Certification). BLACK'S L. DICT., at 1467 ("subpoena *duces tecum*" "a subpoena ordering the witness to appear and to bring specified documents, records, or things.").

[16] To the extent the trial court's own failure to address the motion in a timely fashion created any problems, those concerns were not a justification for denying the motion to amend, as they were a result of the trial court's own inaction, which should not result in penalizing a party.

948

amendment, it is difficult to conclude that allowing the amendment would have even remotely disrupted the trial court's procedure, had the trial court acted on the motion in a timely manner, which is the pivotal consideration of any analysis of whether a party has unduly delayed in seeking leave to amend a pleading. *Pedro*, 63 V.I. at 523 (Gomez, D.J., concurring in part and dissenting in part); *see Caribbean Healthways*, 55 V.I. at 699 n.4 (acknowledging that the appellant on remand could "move at any time to amend the pleadings" even after a permanent injunction had been granted because the granting of the injunction did not foreclose the claim that was sought to be amended).

Considering these circumstances, it is impossible to conclude that Stewart was unduly prejudiced when she was afforded over two years after the amended answer and counterclaim were filed on May 27, 2011, to conduct discovery. Moreover, Stewart did prepare and file a response to the counterclaim stated in Toussaint's amended answer. Indeed, it appears that Toussaint's original pleading of his sixth "affirmative defense" made the litigants and the court cognizant of the nature of Toussaint's interest in the Property, as it was the trial court that noted that

> Ann Toussaint and Hillary Toussaint are still married. And it appears that these transactions all occurred after they became married. Therefore, there is at least some evidence that this property was to be theirs as marital property. And in as much as they are still married, they both still have interest in that property.

Therefore, there was no prejudice to Stewart, since she had the actual opportunity to respond to the amendment. *Daniel v. Gov't of the V.I.*, 30 V.I. 134, 141 (D.V.I. App. Div. 1994) ("Inasmuch as the amended complaint alleges an individual claim against [a party] who was already a named defendant from the inception of this action, there is no real prejudice to this defendant in granting leave to amend. Moreover, appellant is not seeking to add a new claim against [that party], but merely to set out her malpractice claim with greater specificity."). Given the lack of prejudice, which is the most important factor in determining whether leave to amend should be freely given, *Daniel*, 30 V.I. at 140-41; *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), and the fact that "passage of time, without more, does not require that a motion to amend a complaint be denied," *Pedro*, 63 V.I. at 523 (Gomez, D.J., concurring in part and dissenting in part) (quoting *Adams*, 739 F.2d at 868), the trial court's reliance on

Toussaint's delay in seeking leave to amend and Stewart's supposed lack of opportunity to respond as justification for striking Toussaint's amended answer and counterclaim was an abuse of discretion.

■■ ■■ As we noted above, Rule 8 contains no requirement that a motion be filed prior to seeking amendment. In light of this non-restrictive language and the court's admonishment that "the answers **are going to have to be amended** to clarify that and to conform to Section 284," (Emphasis added), Toussaint could rightly have concluded that the trial court had orally ordered him to file the amendment, justifying his failure to submit a motion prior to filing the amendment. In the context of a notice of appeal to a circuit court, the United States Supreme Court in *Foman v. Davis* provided an explanation that summarizes our foregoing analysis. The appellant had prematurely filed a notice of appeal to the United States Court of Appeals for the First Circuit, and that court found it to be of no effect. 371 U.S. at 180. Further, because the second notice of appeal was filed more than 30 days after one of the orders sought to be reviewed, the First Circuit found the notice of appeal ineffective as to that order. The Supreme Court reversed the First Circuit and explained as follows:

> The defect in the second notice of appeal did not mislead or prejudice the respondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest. Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal.

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Foman*, 371 U.S. at 181-82 (citation omitted). Here, Toussaint's affirmative defense in his initial and timely filed answer put both the trial court and Stewart on notice as to what interest he was claiming, and the witness necessary to provide the evidence relating to this claim was produced by both Toussaint and Stewart at trial. What happened at trial in this matter was far more a matter of turning the rules of pleading into a game of sport in which Toussaint's extremely liberal right to seek amendment was unduly restricted by an overly technical interpretation of the rules of pleading that are meant to facilitate decisions on the merits, not frustrate them. Considering the above, the trial court abused its discretion by not allowing Toussaint to proceed with his amended answer and counterclaim. *Daniel*, 30 V.I. at 141.

█ Likewise, because the refusal to allow the amendment was an abuse of discretion, the trial court's ruling precluding Toussaint from presenting evidence of his equitable interest in the Property at trial as a sanction pursuant to 28 V.I.C. § 284 ("The defendant shall not be allowed to give in evidence any estate in himself . . . unless the same is pleaded in his answer."), was an abuse of discretion.

## B. Because the Trial Court Failed to Conduct a Banks Analysis When Ruling on the Motion to Enforce the Mediated Settlement Agreement, the Trial Court Committed Reversible Error.

█ █ A mediated settlement agreement is an enforceable contract governed by common law principles of contract. *See Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 459 (V.I. 2014); *Sanghavi Jewels, Inc. v. Shalhout*, Civ. No. 2011-30, 2012 U.S. Dist. LEXIS 139413, at *10-12 (D.V.I. Sept. 27, 2012) (unpublished). In ruling on this motion, the trial court relied on two decisions from the Territorial Court of the Virgin Islands and one from the District Court of the Virgin Islands. *E.g., Isidor Paiewonsky Assocs. v. Sharp Properties, Inc.*, 761 F. Supp. 1231, 26 V.I. 228 (D.V.I. 1991); *James v. Fitzpatrick*, 25 V.I. 124 (V.I. Super. Ct. 1990); *Ventura v. Pearson*, 17 V.I. 107 (V.I. Super. Ct. 1980). These decisions, in turn, rely on the Restatement of Contracts sections 20, 22, 25, and 32 and the Restatement (Second) of Contracts sections 17, 22, 24, 35, 36, 38, and 39, which recite the general propositions of contract law that "settlement agreements are governed by the law of contracts," that "a contract is created only when parties mutually assent to specific terms," that "agreement is shown by proof of an offer and an acceptance," and that "the offer and acceptance must mirror each other in order for a

contract to be legally formed." Yet, this Court has adopted none of these propositions through a Banks Analysis. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011); *see also Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014). The failure to conduct a Banks Analysis is reversible error. *Connor*, 60 V.I. at 604. This issue is remanded to the trial court for consideration of whether the principles of contract law relied upon by the Superior Court should apply in light of the three "*Banks* Factors," (1) whether the common law rule has ever been applied by any of the courts of the Virgin Islands, past or present; (2) what the majority of jurisdictions in the country have adopted as a relevant rule; and most importantly, (3) what rule constitutes the soundest rule for the Virgin Islands. *Inniss v. Inniss*, 65 V.I. 270, 280 (V.I. 2016).

## V. CONCLUSION

Because the trial court premised its striking of Toussaint's amended answer and counterclaim and the exclusion of evidence of his equitable estate in the Property upon an incorrect legal interpretation and because allowing the amendment would not have prejudiced Stewart and would not have significantly disrupted the trial proceedings, the trial court abused its discretion when it struck Toussaint's amended answer and counterclaim and precluded Toussaint from presenting evidence of his equitable interest in the Property. The trial court likewise abused its discretion when it decided the motion to enforce the mediated settlement agreement without conducting a Banks Analysis prior to determining the merits of the motion. Accordingly, the October 30, 2013 order denying Toussaint's motion to enforce the mediated settlement agreement and the May 24, 2016 order granting Stewart's motion to dismiss Toussaint's amended answer and counterclaim and the findings of fact and conclusions of law, as well as the judgment premised thereon, are reversed and vacated, and this matter is remanded to the trial court for proceedings consistent with this opinion.